# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ANDREA BRITTON<br>c/o Tittle & Perlmuter<br>4106 Bridge Avenue<br>Cleveland, Ohio 44113 | * * * * * | Case No: |
| And | * * | |
| SHIEKKA HEREFORD<br>c/o Tittle & Perlmuter<br>4106 Bridge Avenue<br>Cleveland, Ohio 44113 | * * * * * | Judge: |
| *On Behalf of Themselves and All*<br>*Other Similarly Situated Individuals* | * * * | |
| PLAINTIFFS[1], | * * | |
| v. | * * | |
| MPKS, INC.<br>d/b/a ALIBI INN<br>d/b/a TREASURES<br>2232 Rockwell Avenue<br>Cleveland, Ohio 44114 | * * * * * * | |
| SERVE: Tong Kim<br>2002 Hood Avenue<br>Cleveland, Ohio 44109 | * * * * | |
| And | * * | |
| TONG KIM<br>2002 Hood Avenue<br>Cleveland, Ohio 44109 | * * * * | |
| And | * * | |
| VERONICA KIM<br>2002 Hood Avenue<br>Cleveland, Ohio 44109 | * * * * | |

---

[1] To avoid retaliation, Plaintiffs have used the mailing address of their attorney.

| | |
|---|---|
| And | * |
| | * |
| ROCKWELL BISTRO, LLC | * |
| d/b/a ALIBI INN | * |
| d/b/a TREASURES | * |
| 2232 Rockwell Avenue | * |
| Cleveland, Ohio 44114 | * |
| | * |
| SERVE REGISTERED AGENT | * |
| Jeannette Charara | * |
| 2232 Rockwell Avenue | * |
| Cleveland, Ohio 44114 | * |
| | * |
| DEFENDANTS. | * |

***************************************************************************

## CLASS AND COLLECTIVE ACTION COMPLAINT

1. This is a class and collective action brought by Plaintiffs Andrea Britton and Shiekka Hereford ("Plaintiffs") against Defendants MPKS, Inc. d/b/a Alibi Inn and/or Treasures ("MPKS"), Tong Kim and Veronica Kim ("Mr. and Mrs. Kim"), and Rockwell Bistro, LLC d/b/a Alibi Inn and/or Treasures ("Rockwell") (collectively, "the Club" or "Defendants").

2. The class and collective are composed of individuals who, during the relevant time period of August 2018 through the date of judgment in this case ("the relevant period"), worked as female exotic dancers for Defendants at Defendants' "Alibi Inn" and/or "Treasures" Gentlemen's Club in Cleveland, Ohio, and were denied payment of minimum wage compensation as guaranteed under state and federal laws.

3. Specifically, Plaintiffs complain that Defendants misclassified Plaintiffs and all other female exotic dancers that work or worked at Defendant's "Alibi Inn" and/or "Treasures" Gentlemen's Club during the relevant period, when Plaintiffs and the other female exotic dancers should have been classified as "employees."

4. As a result, Defendants failed to pay Plaintiffs and all other members of the class and collective minimum wage compensation they were entitled to under the Federal Fair Labor

2

Standards Act ("FLSA") and the Ohio Constitution art. II, § 34a, the Ohio minimum wage and overtime compensation laws, Ohio Rev. Code Chapter 4111, and common law.

5. Plaintiffs bring this class and collective action against Defendants seeking damages, back-pay, restitution, liquidated damages, prejudgment interest, reasonable attorney's fees and costs, and all other relief that the Court deems just, reasonable and equitable in the circumstances.

## PARTIES AND JURISDICTION

6. Plaintiffs are adult residents of Cuyahoga County, Ohio.

7. Plaintiffs bring this case on their own behalf as representatives in a collective action under the FLSA and a class action under the Ohio Constitution art. II, § 34a, Ohio Rev. Code Chapter 4111, and Ohio common law.

8. Both Plaintiffs' written consents to be parties to this action are attached hereto pursuant to 29 U.S.C. § 216(b).

9. MPKS is a corporation, formed under the laws of Ohio, that, for the relevant period until about November 2020, operated as a gentlemen's club featuring female exotic dancers under the business or trade names "Alibi Inn" and/or "Treasures" at the physical location, 2232 Rockwell Avenue, Cleveland, Ohio 44114.

10. For the relevant period until about November 2020, Mr. and Mrs. Kim, individually, were the most senior managers at "Alibi Inn" and/or "Treasures" and, in this capacity, individually had the power and authority to hire, fire, and otherwise discipline Plaintiffs and all other exotic dancers and other employees working at "Alibi Inn" and/or "Treasures."

11. For the relevant period until about November 2020, Mr. and Mrs. Kim, individually, had the power and authority and did, in fact, participate substantially in classifying Plaintiffs and the

3

other female exotic dancers as contractors rather than employees and corresponding decisions to fail to pay Plaintiffs and other female exotic dancers any wages for hours worked at "Alibi Inn" and/or "Treasures."

12. For the relevant period until about November 2020, Mr. and Mrs. Kim were responsible for keeping and maintaining all employee records for Plaintiffs, the other female exotic dancers, and all other employees working at "Alibi Inn" and/or "Treasures."

13. For the relevant period until about November 2020, Mr. and Mrs. Kim were the primary owners and operators of MPKS and individually and substantially participated in controlling and administering the business operations of the "Alibi Inn" and/or "Treasures"

14. For the relevant period until about November 2020, MPKS and Mrs. and Mrs. Kim collectively and individually qualified as "employers" of and for Plaintiffs and the other female exotic dancers working at "Alibi Inn" and/or "Treasures" as the term is defined under the FLSA and the OMWL.

15. Rockwell is a limited liability company, formed under the laws of Ohio, that does business under the trade names "Alibi Inn" and/or "Treasures" and operates as a gentlemen's club featuring female exotic dancers at the address 2232 Rockwell Avenue, Cleveland, Ohio 44114.

16. On information and belief, Defendant's owner(s) and member(s) is or are adult residents of the State of Michigan.

17. In or June 2020, Rockwell registered to do business in the State of Ohio.

18. During the period June 2020 through about November or December 2020, Rockwell and its individual ownership performed reasonable due diligence with an interest and intent to purchase the "Alibi Inn" and/or "Treasures" business operation from MPKS and Mr. and Mrs.

Kim, individually.

19. At the time Rockwell was performing due diligence relating to the purchase of the "Alibi Inn" and/or "Treasures," Rockwell, including its individual ownership had actual or constructive knowledge that MPKS and Mr. and Mrs. Kim misclassified Plaintiffs and the other female exotic dancers and, arising therefrom, Plaintiffs and the other female exotic dancers had a meritorious claim for unpaid wages and related damages.

20. In or about November or December 2020, the liquor license for the "Alibi Inn" and/or "Treasures" Gentlemen's Club was transferred from MPKS to Rockwell.

21. Following a period of reasonable due diligence, during the period of about June 2020 through November or December 2020, Rockwell purchased the "Alibi Inn" and/or "Treasures" from prior ownership, MPKS and Mr. and Mrs. Kim, and began operations as the "Alibi Inn" and/or "Treasures."

22. Following the date of sale in or about November or December 2020, MPKS and Mr. and Mrs. Kim ceased operations and control of the "Alibi Inn" and/or "Treasures."

23. Following the date of sale in or about November of December 2020, MPKS and Mr. and Mrs. Kim no longer held an ownership, financial, or operational interest in the "Alibi Inn" and/or "Treasures."

24. Following the date of purchase/sale in or about 2020, managers and officers on behalf of Rockwell controlled, managed, and supervised the day-to-day operations of the "Alibi Inn" and/or "Treasures," made the decision to continue to misclassify Plaintiffs and other female exotic dancers as independent contractors rather than as employees, made the decision to pay Plaintiffs and the other female exotic dancers no wages, and had the authority to hire, fire, discipline, and suspend Plaintiffs and the other female exotic dancers.

25. Rockwell operates as a legal successor and continuation of MPKS and Mr. and Mrs. Kim in its operation of the "Alibi Inn" and/or "Treasures" because:

    (i) Following the purchase/sale, the gentlemen's club continued to operate under the same trade name(s), "Alibi Inn" and/or "Treasures";

    (ii) Following the purchase/sale, the business continued to operate as a gentlemen's club featuring female exotic dancers;

    (ii) Following the purchase/sale, the business continued to operate at the identical business address;

    (iii) Following the purchase/sale, MPKS and Mr. and Mrs. Kim ceased operations and ceased generating revenue when Rockwell commenced operations and generating revenue at the identical business address;

    (iv) Following the purchase/sale, the business continued to provide/offer the same or substantially similar food, spirituous beverages, and female exotic dancer entertainment;

    (v) Following the purchase/sale, the business provided nearly identical female exotic dancer entertainment to substantially similar customers;

    (vi) Following the purchase/sale, Defendant retained and continued to employ nearly all the female exotic dancers and other non-dancer employees and managers (other than Mr. and Mrs. Kim) that were employed by the MPKS and Mrs. and Mrs. Kim without requirement of further interview, auditioning, or similar vetting;

    (vii) Following the purchase/sale, the business subjected Plaintiffs and the other female exotic dancers at the "Alibi Inn" and/or "Treasures" to the same or substantially similar rules, pay structure, fee, fine, and kickback scheme, and independent contractor misclassification.

26. At or before the time Rockwell purchased the "Alibi Inn" and/or "Treasures," Rockwell had actual or constructive notice the MPKS and Mr. and Mrs. Kim, as the prior owner of the "Alibi Inn" and/or "Treasures":

(i) Misclassified its exotic dancers as independent contractors when the exotic dancers should have been classified as employees under the FLSA and Ohio law;

(ii) Did not pay any wages to its exotic dancer employees; and

(iii) Failed to pay its exotic dancer employee workforce in compliance with the requirements of the FLSA and Ohio law.

27. At or before the time Rockwell purchased the "Alibi Inn" and/or "Treasures," Rockwell had actual knowledge of lawsuits involving other similar gentlemen's clubs in Ohio, Michigan, and across the country wherein current and former exotic dancers filed lawsuits and arbitration actions for (i) misclassification as independent contractors; and (ii) failure of the clubs to pay minimum wage compensation and otherwise complying with state and federal labor and employment laws.

28. At or before the time Rockwell purchased the "Alibi Inn" and/or "Treasures," Rockwell had actual or constructive knowledge of potential wage and hour legal claims belonging to Plaintiffs and other misclassified exotic dancers against the "Alibi Inn" and/or "Treasures."

29. Because it qualifies as a legal successor, Rockwell is liable as Plaintiffs' employer and the employer of all other exotic dancers at the "Alibi Inn" and/or "Treasures" within the meaning of the FLSA and Ohio law for the entire period relevant to this action.

30. At all times material to this action, Plaintiffs and each of the other female exotic dancer worked at the "Alibi Inn" and/or "Treasures" was an individual employees engaged in commerce or the production of goods within the scope of the FLSA, 29 U.S.C. §§ 206 and 207.

31. At all times material to this action, Defendants operated as an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), in that said enterprise had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise had and has an annual gross volume of sales made or business done in each relevant year exceeding $500,000.00.

32. During the period of Plaintiffs' employment, Defendants purchased and served beer and liquor which was brewed/distilled outside of Ohio, along with soda, which was also manufactured outside of Ohio.

33. During the period of Plaintiffs' employment, Defendants purchased and served food goods which were manufactured, grown, processed, raised, and/or packaged outside of Ohio.

34. During the period of Plaintiffs' employment, Defendants purchased and streamed music through the internet that was recorded and stored outside of Ohio.

35. During the period of Plaintiffs' employment, Defendants purchased and utilized equipment and goods used to operate the business such as kitchen equipment, kitchenware, cutlery, tableware, and paper goods that were manufactured outside of Ohio.

36. During the period of Plaintiffs' employment, Defendants' employees, including Plaintiffs and the other exotic dancers, sold goods and services through the processing of Defendants' customers' credit cards thereby relying on contractual assurances from processors or third parties outside of Ohio.

37. During the period of Plaintiffs' employment, Plaintiffs and the other exotic dancers at the "Alibi Inn" and/or "Treasures" entertained Defendants' customers by dancing to streamed music

from the internet stored outside of Ohio from providers and services based outside of Ohio and which was created by artists outside of Ohio.

38. During the period of Plaintiffs' employment, Plaintiffs and the other female exotic dancers sold and/or delivered food, drinks, and other merchandise, created outside of Ohio, to Defendant's customers.

39. During the period of Plaintiffs' employment, Plaintiffs and the other female exotic dancers purchased stage attire, makeup, and shoes for their performances, which traveled through interstate commerce and which were manufactured outside of Ohio.

40. During the period of Plaintiffs' employment, Defendants played televised sporting events for the entertainment of Defendants' customers that occurred outside of Ohio.

41. During the period of Plaintiffs' employment, Plaintiffs' work and the work of Defendants' other female exotic dancer employees was vitally related to the functioning of the "Alibi Inn" and/or "Treasures" business operation, which itself is a facility of interstate commerce as described herein, that Plaintiffs and Defendants' other female exotic dancer employees were each personally engaged in interstate commerce.

42. The relief sought in this action against Defendants arises under the FLSA, a Federal Statute, and Subject Matter Jurisdiction is therefore proper in this Court based on Federal Question.

43. The alleged acts and omissions giving rise to this action occurred primarily in or around Cuyahoga County, Ohio, and in consideration of this fact and the foregoing, Venue and Personal Jurisdiction are proper in the United States District Court for the Northern District of Ohio.

44. This Court has supplemental jurisdiction over the interrelated Ohio state law and

common law claims alleged herein.

## FACTS

45. Plaintiffs were employed by Defendants as female exotic dancers at Defendants' "Alibi Inn" and/or "Treasures" gentlemen's club in Cleveland, Ohio.

46. Plaintiff Andrea Britton was employed by Defendants as a female exotic dancer at Defendants' "Alibi Inn" and/or "Treasures" gentlemen's club for the period of about 2015 through about November 2019, and again from about October 2020 until about January 2021.

47. Plaintiff Shiekka Hereford was employed by Defendants as a female exotic dancer at Defendants' "Alibi Inn" and/or "Treasures" gentlemen's club from about 2017 through about November 2019, and again from about October 2020 until about January 2021.

48. During the period of Plaintiffs' employment, the number of shifts Plaintiff worked varied from week to week.

49. During the period of Plaintiff's employment, the exact number of hours Plaintiffs worked varied from week to week.

50. While employed, Plaintiffs customarily worked three (3) to five (5) shifts per week for a total of about eighteen (18) to thirty-five (35) hours per week.

51. On information and belief, Defendants have possession of time and/or sign in "house fee" payment records for Plaintiffs and all other female exotic dancers employed by Defendants.

52. At all times, Defendants had actual knowledge of all hours Plaintiffs and all other female exotic dancers worked each shift through sign in or tip-in sheets, DJ records, and shift-managers monitoring and supervising Plaintiffs' work duties and the work duties of other female exotic dancers at the "Alibi Inn" and/or "Treasures."

53. At no time during Plaintiffs' period of employment did Defendants ever pay Plaintiffs or any other female exotic dancer any wages for hours that Plaintiffs and other female exotic dancers worked each week.

54. At all times relevant, Defendants totally failed to pay wages or any kind of compensation to Plaintiffs and all other female exotic dancers for work duties performed.

55. At all times relevant, Defendants misclassified Plaintiffs and all other female exotic dancers at the "Alibi Inn" and/or "Treasures" as independent contractors when these individuals should have been classified under the FLSA and Ohio law as employees.

56. At all times relevant, Defendants controlled all aspects of the job duties Plaintiffs and all other female exotic dancers performed inside the "Alibi Inn" and/or "Treasures" through employment rules and workplace policies.

57. At all times relevant, Defendants controlled the method by which Plaintiffs and all other female exotic dancers could earn money inside the "Alibi Inn" and/or "Treasures" by establishing dance orders, setting customer prices on private and semi-private exotic dances, and setting private and semi-private dance specials and promotions for customers.

58. At all times relevant, Defendants required Plaintiffs and all other female exotic dancers to perform private and semi-private dances under the pricing guidelines, policies, procedures, and promotions set exclusively by Defendants.

59. Defendants hired Plaintiffs and all other female exotic dancers and, at all times relevant, Defendants had full authority and ability to discipline them, fine them, fire them, and adjust their work schedules.

60. At all times relevant, Defendants, through supervisors and managers, supervised Plaintiffs and the female exotic dancer duties to make sure their job performance was of

11

sufficient quality.

61. Defendants conducted initial interviews and vetting procedures for Plaintiffs and all other female exotic dancers and, at Defendants' sole discretion, Defendants' management and/or ownership could deny Plaintiffs or any other female exotic dancer access or ability to dance and/or work at the "Alibi Inn" and/or "Treasures."

62. At all times relevant, Defendants had the right to suspend or send Plaintiffs or any other female exotic dancer home and away from the "Alibi Inn" and/or "Treasures" if Plaintiffs or any other dancer violated Defendant' rules or policies or if Defendant' ownership or management did not want Plaintiffs or any other female exotic dancer the "Alibi Inn" and/or "Treasures."

63. As a condition of employment with Defendants, Plaintiffs and other female exotic dancers were not required to have or possess any requisite certification, education, or specialized training.

64. At all times relevant, Defendants were in the business of operating the "Alibi Inn" and/or "Treasures," a night club in Cleveland, Ohio, advertising to the general public as a bar and eatery featuring entertainment by Defendants' female exotic dancers.

65. At all times relevant, it was Plaintiffs' job duty and the job duty of each other female exotic dancer to perform as exotic dancers for Defendants' customers at the "Alibi Inn" and/or "Treasures."

66. In addition to failing to pay Plaintiffs and all other female exotic dancers any wages for hours worked, Defendants required Plaintiffs and all other female exotic dancers to pay Defendants and/or their agents a house fee and other kickbacks of about $40.00 - $60.00 or more for each shift Plaintiffs and the other female exotic dancers worked at the "Alibi Inn" and/or "Treasures."

67. At all times during the relevant period, without legal excuse or justification, Defendants regularly and customarily kept and/or assigned to management tips and gratuities Plaintiffs and other female exotic dancers received from customers of the "Alibi Inn" and/or "Treasures."

68. On information and belief, Defendants and/or their management, had actual or constructive knowledge of ongoing or past litigation by female exotic dancers against gentlemen's clubs like the "Alibi Inn" and/or "Treasures" in which the female exotic dancers challenged their independent contractor classification and otherwise sought to recover unpaid wages and damages under the FLSA state wage and hour laws.

69. On information and belief, Defendant and/or their management had actual or constructive knowledge that courts in Ohio and across the country in ongoing or past litigation have found that female exotic dancers with functionally identical work/compensation structures as that of Plaintiffs and other female exotic dancers at the "Alibi Inn" and/or "Treasures" were employees and not independent contractors and are/were owed minimum wage compensation under the FLSA and Ohio law.

70. On information and belief, for the entire period relevant to this action, Defendants had actual or constructive knowledge that Plaintiffs and other female exotic dancers at the "Alibi Inn" and/or "Treasures" were misclassified as independent contractors instead of as employees and that Defendants' failure to pay wages and charging unlawful kickbacks to Plaintiffs and other female exotic dancers was in direct violation of the FLSA and the Ohio.

## CLASS ALLEGATIONS

71. Plaintiffs bring this action individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

72. The Rule 23 Class is defined in this matter as all individuals, who at any time during the

relevant period, worked for Defendants as female exotic dancers at the "Alibi Inn" and/or "Treasures" in Cleveland, Ohio, but were classified by Defendants as an independent contractor and therefore, were not paid minimum wage compensation as required by Ohio Rev. Code Ann. § 4111.02 and Ohio Const. art. II, § 34a. (hereinafter, "the Class").

73. On information and belief, the Class are believed to exceed fifty (50) current and former female exotic dancers at the "Alibi Inn" and/or "Treasures" and is therefore so numerous that joinder of all members is impracticable.

74. There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members, including, but not limited to:

    i. Whether Rockwell qualifies as MPKS and Mr. and Mrs. Kim's legal successor under Ohio law;

    ii. Whether Defendants violated the Ohio law by misclassifying all female exotic dancers at the "Alibi Inn" and/or "Treasures" as "independent contractors," as opposed to employees, and not paying them any wages;

    iii. Whether Defendants unlawfully required Plaintiffs and the Class to split their tips with Defendants and/or their managers;

    iv. Whether the monies given to dancers by patrons when they perform private and semi-private dances are gratuities or "service fees";

    v. Whether Defendants violated Ohio law by requiring exotic dancers to pay a "house fee" in exchange for the ability to work at the "Alibi Inn" and/or "Treasures";

    vi. Whether Defendants violated Ohio law by knowingly accepting the benefit of their exotic dancers' labor without paying any compensation to them; and

    vii. The amount of damages and other relief (including statutory liquidated damages)

Plaintiffs and the Class are entitled to.

75. Plaintiffs' claims are typical of those of the Class.

76. Plaintiffs, like other members of the Class, was misclassified as an independent contractors and denied their rights to wages and gratuities under Ohio law.

77. Defendants' misclassification of Plaintiffs was done pursuant to a common business practice which affected the Class in a similar way.

78. Plaintiffs and the undersigned counsel are adequate representatives of the Class.

79. Given Plaintiffs' loss, Plaintiffs have the incentive and are committed to the prosecution of this action for the benefit of the Class.

80. Plaintiffs have no interests that are antagonistic to those of the Class or that would cause them to act adversely to the best interests of the Class.

81. Plaintiffs have retained counsel experienced in class and collective actions and, in particular, litigation of wage and hour disputes.

82. This action is maintainable as a class action under Fed. R. Civ .P. 23(b)(1), 23(b)(2), and 23(c)(4) because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants.

83. This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class and because a class action is superior to other methods for the fair and efficient adjudication of this action.

**COLLECTIVE ACTION ALLEGATIONS**

84. Plaintiffs are pursuing this lawsuit as collective action under FLSA Section 216(b) on

behalf of themselves and all other similarly situated individuals who, at any time during the relevant period, worked at the "Alibi Inn" and/or "Treasures" in Cleveland, Ohio, as female exotic dancers and were classified by Defendants as independent contractors and not paid minimum wage compensation as required by the FLSA (hereinafter, "the Collective").

85. Plaintiffs and the Collective are similarly situated because each were (1) improperly classified as independent contractors; (2) were not paid any wages by Defendants for hours worked; (3) were not paid wages at or above Ohio's applicable minimum wage or the Federal Minimum Wage of $7.25 for each hour worked.

86. Plaintiffs' damages are substantially similar to other members of the Collective because, under the FLSA, each are owed payment for all hours worked in an amount equal to the "free and clear" Federal Minimum Wage of $7.25 per hour; plus statutory liquidated damages as provided by Federal law for Defendant and/or its legal predecessors' failure to pay minimum wage compensation as required by the FLSA.

87. On information and belief, Defendants employed at least fifty (50) current and former female exotic dancers at the "Alibi Inn" and/or "Treasures" in the past three (3) years.

88. On information and belief, Defendants are in custody, possession, and control of identifying records relating to all current and former exotic dancers employed by Defendant at the "Alibi Inn" and/or "Treasures" in the past three (3) years.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE FLSA
**(Failure to Pay Statutory Minimum Wages)**

89. Plaintiffs hereby incorporate the preceding paragraphs by reference as if fully set forth herein.

90. The FLSA required Defendants to pay Plaintiffs and other similarly situated female exotic dancers at an hourly rate at least equal to the Federal Minimum Wage.

91. The FLSA required that Defendants allow Plaintiffs and other similarly situated female exotic dancers to keep all tips and gratuities received from customers.

92. As set forth above, Defendants failed to pay Plaintiffs and other similarly situated female exotic dancers at hourly rates in compliance with the FLSA Federal Minimum Wage requirements.

93. Without legal excuse or justification, Defendants kept and/or assigned to management tips and gratuities received by Plaintiffs and other female exotic dancers and belonging to Plaintiffs and other female exotic dancers.

94. Defendants' failure to pay Plaintiffs and other similarly situated female exotic dancers as required by the FLSA was willful and intentional and was not in good faith.

## COUNT II
## VIOLATION OF OHIO MINIMUM WAGE LAW
**(Failure to Pay Statutory Minimum Wage)**

95. Plaintiffs hereby incorporate the preceding paragraphs by reference as if fully set forth herein.

96. Ohio Const. art. II, § 34a and Ohio Rev. Code Ann. § 4111.02 both required Defendants to pay Plaintiffs and members of the Class at an hourly rate at least equal to the Ohio Minimum Wage.

97. Ohio Const. art. II, § 34a and Ohio Rev. Code Ann. § 4111.02 both required that Defendants allow Plaintiffs and members of the Class to keep all tips and gratuities received from customers.

98. As set forth above, Defendants failed to pay Plaintiffs and members of the Class at

hourly rates in compliance with Ohio Const. art. II, § 34a and Ohio Rev. Code Ann. § 4111.02.

99. Without legal excuse or justification, Defendants kept and/or assigned to management tips and gratuities received by Plaintiffs and other Class members and belonging to Plaintiffs and other Class members.

100. Defendants' failure to pay Plaintiffs and other Class members as required by Ohio Const. art. II, § 34a and Ohio Rev. Code Ann. § 4111.02 was willful and intentional and was not in good faith.

## COUNT III
## UNJUST ENRICHMENT

101. Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

102. Plaintiffs and the Class members conferred a benefit on Defendants by working many hours for which they received no compensation.

103. Defendants knew they were receiving a benefit by retaining and utilizing the labor of Plaintiffs and the Class members while unlawfully providing no compensation. Defendants intentionally designed their compensation structure so as to obtain that benefit for themselves.

104. Defendants obtained the benefit of the labor of Plaintiffs and the Class members under circumstances in which it would be unjust for Defendants to do so without payment.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs, individually and on behalf of those similarly situated, prays for relief as follows:

    A. Permitting this case to proceed as a collective action under § 216(b) of the FLSA and ordering notice to the putative plaintiffs at the earliest opportunity to ensure their claims are not lost to the FLSA statute of limitations;

B. Permitting Plaintiffs' Class claims under Ohio Const. art. II, § 34a, Ohio Rev. Code Ann. § 4111.02, and Ohio common law to proceed as a Class Action under Federal Rule of Civil Procedure 23;

C. Judgment finding that Rockwell qualifies as a legal successor to MPKS, Inc. and Mrs. and Mrs. Kim under the FLSA and Ohio law;

D. Judgment against Defendants for failing to pay "free and clear" minimum wage compensation to Plaintiffs and other similarly situated individuals as required by Ohio law;

E. Judgment against Defendants for failing to pay "free and clear" minimum wage compensation to Plaintiffs and other similarly situated individuals as required by the FLSA;

F. Judgment against Defendants for unlawfully taking and/or assigning tips and gratuities belonging to Plaintiffs and other similarly situated individuals;

G. Judgment that Defendants' violations of Ohio law minimum wage requirements were not the product of good faith on the part of Defendants;

H. Judgment that Defendants' violations of the FLSA minimum wage requirements were not the product of good faith on the part of Defendants;

I. Judgment that Defendants' violations of the OMWL minimum wage requirements were willful;

J. Judgment that Defendants' violations of the FLSA minimum wage requirements were willful;

K. An award to Plaintiffs and those similarly situated in the amount of all "free and clear" unpaid wages found to be due and owing to Plaintiffs and each similarly situated individual;

L. An award to Plaintiffs and those similarly situated in the amount of all tips and

gratuities unlawfully taken and/or assigned by Defendants and/or their management;

 M. An award of statutory liquidated damages in amounts prescribed by Ohio law;

 N. An award of statutory liquidated damages in amounts prescribed by the FLSA;

 O. An award of attorneys' fees and costs to be determined by post-trial petition;

 P. Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and

 Q. Such further relief as may be necessary and appropriate.

              Respectfully submitted,

Dated: October 13, 2021      TITTLE & PERLMUTER

              */s/ Scott Perlmuter*
              Scott D. Perlmuter (Ohio Bar No.: 0082856)
              4106 Bridge Avenue
              Cleveland, Ohio 44113
              (216) 308-1522 (Phone)
              E-mail: Scott@TittleLawFirm.Com

              ZIPIN, AMSTER, & GREENBERG, LLC

              */s/ Gregg C. Greenberg*
              Gregg C. Greenberg (MD Fed. Bar No. 17291)
              (Pro Hac Vice Forthcoming)
              8757 Georgia Avenue, Suite 400
              Silver Spring, Maryland 20910
              (301) 587-9373 (Phone)
              Email: GGreenberg@ZagFirm.com

              *Counsel for Plaintiffs and the Class / Collective*